### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDA ROBERTS, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. CIV-11-0951-HE |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

On August 23, 2011, plaintiff, Linda Roberts, filed this action alleging defendant violated the Age Discrimination in Employment Act ("ADEA") by terminating her and similarly situated individuals who were over 40 years of age at the time of termination. She sought to bring a collective action under the ADEA on behalf "of all terminated and constructively discharged employees who worked for the defendant who were forty (40) years of age and older as of the last date of discriminatory actions taken against them." Roberts v. Target Corp., Case No. CIV-11-0951-HE, complaint at ¶ 5.02 [Doc. #1] [hereafter cited as *Roberts*]. In addition to her federal claim, plaintiff also purported to bring a state law claim pursuant to Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), on behalf of herself and others. On September 19, 2011, defendant filed an answer to the complaint and a motion to dismiss the Rule 23[1] class action and constructive discharge claims. Thereafter, plaintiff filed motions to amend the complaint and to join 33 additional party plaintiffs. On

---

[1] *While collective actions under the ADEA are governed by 29 U.S.C. § 216(b), representative actions with respect to state law claims must satisfy Fed. R. Civ. P. 23.*

February 7, 2012, the court issued an order granting defendant's motion to dismiss the class action, constructive discharge, and *Burk* claims. The court also denied plaintiff's motions to join additional party plaintiffs, concluding that the claims of all but three of the putative plaintiffs were time-barred. The court determined the relevant time frame for this action is December 16, 2009 to October 12, 2010 and that only putative plaintiffs who were terminated during that time frame would be able to take advantage of the single-filing exception to the exhaustion doctrine. *Roberts*, ord. at 4-5 [Doc. #50]. With respect to the remaining three putative plaintiffs,[2] the court concluded plaintiff had failed to demonstrate that joinder was permissible under Fed. R. Civ. P. 20. Id. at 3-5.

Thereafter, plaintiff filed an amended complaint. *Roberts*, Amended Complaint [Doc. #51]. In addition to plaintiff, the amended complaint named Lovio, Marotta, and Watson as plaintiffs. On June 20, 2012, the court issued an order striking the additional plaintiffs from the Amended Complaint. *Roberts*, ord. at 8 [Doc. #89]. The court also dismissed plaintiff's request for class certification of her *Burk* claim, the constructive discharge claim, and her request for injunctive relief. Id. 8-9. Thus, the only remaining representative action is with respect to plaintiff's ADEA claim. In that regard, plaintiff now seeks to represent a class of:

> All former employees of Target within the United States who:
> (1) worked for Target for at least five (5) years; (2) who were
> terminated, [or] constructively discharged; (3) were forty (40)
> years of age or older when their employment ended; and (4)

---

[2]*These individuals are Robert Lovio, Joe Marotta, and Janice Watson.* Roberts, ord. at 4, n.4 [Doc. #50].

>whose employment ended between January 1, 2002 and October 12, 2010.

Plaintiff's motion to conditionally certify class, order defendant to produce contact information for the prospective class members, and for authorization to issue class notice at 34 [Doc. #100] (footnotes omitted) [hereafter cited as "Motion to Certify"].[3]

In accordance with the court's scheduling order, plaintiff moved for conditional certification of this case as a collective action. While plaintiff did not support her certification request with expert testimony, defendant presented the expert report of Paul F. White, Ph.D, in opposition to plaintiff's motion. Defendant also filed a motion asking the court to admit the testimony and the report of Dr. White. Although plaintiff had not disclosed the name of any expert witness to be used in conjunction with the conditional certification issue,[4] the court nonetheless granted plaintiff leave to address Dr. White's report through a rebuttal expert. *Roberts*, ord. at 2-3 [Doc. #148]. The court also granted the parties leave to depose the experts, even though discovery had closed,[5] and to file supplemental briefs that addressed the issues raised by the experts. Id. at 3. The

---

[3]*This class differs from the class originally alleged in the Complaint, but is in line with the class as alleged in the Amended Complaint. Compare Complaint at ¶ 5.01 [Doc. #1] with Amended Complaint at ¶ 5.02 [Doc. #51].*

[4]*Pursuant to the court's Scheduling Order, plaintiff was to "disclose experts to be used in connection with conditional certification motion or Rule 23 motion for class certification and to submit expert reports" no later than August 3, 2012. Roberts, ord. at 1 [Doc. #39].*

[5]*The parties were given eight months to conduct discovery. In its Scheduling Order, the court clarified that discovery was "not limited to class certification issues, but shall include merits discovery." Roberts, ord. at 1 n.1 [Doc. #39].*

supplemental briefs were filed on April 30, 2013 and May 1, 2013. The matter is thus now at issue.

Collective actions under the ADEA are authorized by 29 U.S.C. § 626(b). That section explicitly borrows the opt-in class mechanism contained in the Fair Labor Standards Act as codified at 29 U.S.C. § 216(b). Section 216(b) permits collective actions where the representative plaintiff is "similarly situated" to other complaining employees. No employee may become a party to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). As Congress chose not to have Rule 23's standards apply to ADEA collective actions, the Court of Appeals for the Tenth Circuit has indicated district courts should use an *ad hoc* approach when determining whether putative plaintiffs are similarly situated. Thiessen v. General Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach

> a court determines, on an *ad hoc* case-by-case basis, whether plaintiffs are "similarly situated." In utilizing this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." In doing so, a court "'require[s] nothing more than substantial allegations that the putative class members were *together* the victims of a single decision, policy, or plan.'" At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of "similarly situated." During this "second stage" analysis, a court reviews several factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4)

>   whether plaintiffs made the filings required by the ADEA before instituting suit."

Id. at 1102-03 (emphasis added; citations omitted). Substantial allegations, however, mean more than simply the averments in the complaint; otherwise, all ADEA actions alleging class-wide discrimination would be conditionally certified.[6] Rather, plaintiff must present some evidence establishing a colorable basis that the putative class members were all the victims of a single decision, policy, or plan. *See, e.g.,* Saleen v. Waste Mgmt., Inc., 2009 WL 1664451 at *4 (D. Minn. 2009); Bunyan v. Spectrum Brands, Inc., 2008 WL 2959932 at *2 (S.D. Ill. 2008); Bouphakeo v. Tyson Foods, Inc., 2008 WL 2645759 at *12 (N.D. Iowa 2008); Frank v. Gold'n Plump Poultry Inc., 2005 WL 2240336 at *2 (D. Minn. 2005). In a pattern or practice case – such as alleged here – plaintiff has the burden to demonstrate not only that a policy to discriminate exists, but also that unlawful discrimination is the employer's regular procedure or policy, that is "the company's standard operating procedure – the regular rather than the unusual practice." Cooper, 467 U.S. at 875-76 (citation omitted); *see also* Thiessen, 267 F.3d at 1106. This is because the ADEA, like Title VII of the Civil Rights Act of 1964, "prohibits discriminatory employment *practices*, not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons . . . is insufficient to establish his standing to litigate on their

---

[6]*See* Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 877 (1984) ( "if one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action").

behalf all possible claims of discrimination against a common employer." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 159 n.15 (1982) (emphasis in original).

Plaintiff claims that – notwithstanding defendant's written policy against such discrimination[7] – defendant had a nationwide policy of age discrimination. Specifically, plaintiff alleges "a strategic plan by Target to ensure they were employing a younger demographic employee who would match and relate to their sought-after younger demographic." Amended Complaint at ¶ 4.30. Plaintiff claims she and members of the putative class were together "victims of a single age-motivated policy or plan to purge the Defendant's older employees from its workforce." Id. at ¶ 5.06. Other than these largely amorphous allegations, however, plaintiff does not point to any single nationwide plan or policy – such as a reduction-in-force or the "blocker" policy in *Thiessen*[8] – that affected all members of the putative class. Rather, she claims the policy of age discrimination was manifested through defendant's marketing strategy, its college recruiting efforts, and its

---

[7]*Exhibit 8 to Defendant Target Corporation's Response in Opposition to Plaintiff's Motion to Conditionally Certify Class at 11 [Doc. #117-1] ("Target is committed to complying with all applicable federal, state and local laws and regulations relating to . . . equal employment opportunity . . . . Our policies also strictly forbid discrimination and harassment and they will not be tolerated. This applies to all areas of employment, including hiring, training, advancement, compensation, discipline and termination.")*

[8]*Thiessen, 267 F.3d at 1100-01. As the Tenth Circuit noted, the lead plaintiff in Thiessen had "not simply averred the existence of a discriminatory policy or merely argued that circumstantially one should infer its existence by virtue of numerous people in the protected category having incurred adverse employment actions. Instead, he [came] forward with direct evidence of an overall policy of purported age discrimination." Id. at 1101 (quoting Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1071, 1083 (D. Kan. 1998)) (emphasis added).*

managing "out older employees who did not fit the new 'Target Brand' in order to bring in 'new, young, fresh blood'". Motion to certify at 4-5 (citation omitted).

Before the court addresses the evidence presented by plaintiff in support of her motion to certify, the court must clarify the time frame at issue in this litigation. Notwithstanding the court's prior order,[9] plaintiff seeks to represent a class of persons who were terminated[10] by defendant at any time between January 1, 2002 and October 12, 2010. She asserts that because she has alleged a continuing pattern or practice of discrimination, the statute of limitations is tolled as long as the practice continues. Motion to certify at 34-35. The court disagrees. As the district court in Apsley v. Boeing Co. reasoned:

> Since deciding *Morgan* in 2002, the Supreme Court has reaffirmed *Morgan's* ultimate holding that the continuing violation doctrine in not applicable to "discrete acts" of employment discrimination. In *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S. Ct. 2162 (2007), the Supreme Court reiterated *Morgan's* holding that the period for filing a charge of discrimination with the EEOC begins when the act occurs, and that this rule is applicable to all discrete acts of discrimination. Discrimination in termination, failure to promote, denial of transfer, refusal to hire, and pay-setting decisions are all discrete acts. *Id.* at 2165. Therefore, the Supreme Court has been very clear in recent years that the continuing violation doctrine is not applicable to the discrete acts of termination and hiring, the alleged discriminatory practices in this litigation.

---

[9]*Roberts, ord. at 4-5 [Doc. #50].*

[10]*The proposed class also includes individuals who were constructively discharged. In the order issued June 20, 2012, the court granted defendant's motion for judgment on the pleadings with respect to any constructive discharge claim. Moreover, plaintiff's employment was terminated; she was not constructively discharged. Roberts, ord. at 9 [Doc. #89]. She, therefore, cannot represent employees who have constructive discharge claims.*

Apsley v. Boeing Co., 2007 WL 3231526 at *6 (D. Kan. 2007) (footnote omitted), aff'd 691 F.3d 1184 (10th Cir. 2012).  The court specifically held – and this court agrees – that "[t]he fact that plaintiffs allege a 'pattern and practice' of age discrimination does not change the court's analysis. . . .  The termination of employment and failure to rehire are still the discriminatory policies, the discrete acts, causing harm."  Id. at *6 n.11.  The continuing violation doctrine, thus, does not expand the statute of limitations in this case; the relevant time frame for this action is therefore December 16, 2009 to October 12, 2010.[11]  Thus, plaintiff's evidence must be examined to determine whether she presents a colorable basis that the putative plaintiffs were together victims of a single decision, policy, or plan by defendant during that time frame.

Given the time frames involved, plaintiff's reliance on evidence that was presented to the court in the *Lachney*[12] case is largely misplaced.  Much of this evidence[13] relates to

---

[11]*Plaintiff did not allege a continuing violation in her EEOC charge. Therefore, neither the EEOC nor defendant were put on notice that plaintiff was challenging actions as far back as January 1, 2002, particularly given that plaintiff's charge indicated April 2009 was the earliest date that discrimination occurred. Roberts, Exhibit 2 to Plaintiff's Motion to Join Party Plaintiffs [Doc. #31-2]. Moreover, the court fails to see how plaintiff could be considered "similarly situated" to persons who were terminated long before she was hired in August 2005. Roberts, Amended Complaint at ¶ 4.01.*

[12]*Lachney v. Target Corp., Case No. CIV-06-1389-HE (filed Dec. 15, 2006) [hereafter cited as "Lachney"].*

[13]*The court notes that in many instances plaintiff either misrepresented the record or the cited documents did not support the statements made in the brief. For example, plaintiff asserts that "former Director of Diversity Develle Turner testified that no efforts were made by his office to recruit older workers." Motion to Certify at 9. Turner, however, did not so testify. Rather, he stated that when he did presentations or worked with line managers, his focus was on ethnicity and gay/lesbian bisexual transgender issues. Exhibit 25 to Motion to Certify at 58-59. Plaintiff claims Shannon Simon, one of defendant's employees, "characterized persons with 'gray hair' as senior*

incidents that occurred in the 2001 to 2004 time frame, more than a year before plaintiff was hired and more than six years before she was terminated. Plaintiff presents nothing to link this stale testimony to the time frame at issue here. Moreover, in *Lachney*, the court found "[t]he only significant evidence presented by plaintiffs points to Carmen Moch, and thus District 391, as the unifying scheme." *Lachney*, ord. at 11 [Doc. #26]. There was evidence that Moch, who was the Group 391[14] supervisor from late 1999 to 2003, had made ageist comments. *See Lachney*, ord. at 4-5 [Doc. #229]. In contrast to the evidence in *Lachney*, plaintiff presents no evidence of a common denominator that would link any of the

---

*citizens' " and "testified 'Target Brand' was all about 'appearance.'" Motion to Certify at 12. In fact, in the cited testimony Simon said he would not consider a person to be a senior citizen if they had gray hair because his hair was gray and he didn't consider himself a senior citizen. Exhibit 3 to Motion to Certify at 52. Likewise, Simon actually testified that "Target Brand" means "the visual appearance of <u>the Target store</u>. So someone walks in, bright lights, clean floors, easy to shop." <u>Id.</u> at 126 (emphasis added). Plaintiff claims defendant's executives had regular meetings "targeting employees for the process of elimination." Motion to Certify at 16. None of the exhibits cited, however, support this statement. Plaintiff also asserts one of defendant's employees "could not deny that he had heard Target's senior executives refer to 'Target Brand' as 'young and energetic.'" Motion to Certify at 10 n.6. In reality, the employee repeatedly testified he could not recall such statements being made. Exhibit 18 to Motion to Certify at 76. Plaintiff intimates that defendant's chief executive officer had something to do with Robert Rojas's separation from employment and that Tina "Schiel discussed this with Rojas as well." Motion to Certify at 15. The cited passages, however, reflect that the chief executive officer was supportive of Rojas, and there is no indication that Rojas had any conversation about this matter with Schiel. Exhibit 1 to Motion to Certify at 32-36. Furthermore, in a number of places, plaintiff quotes allegations made in EEOC charges or civil complaints as if they were established facts and not merely allegations. See, e.g., Motion to Certify at 8 (citing EEOC charge), 9-10 (Carraher Complaint), 10-11 (Carraher Complaint). The court finds these instances – and others not cited here – to be disconcerting at the least.*

[14]*Defendant's retail organization is divided into four Regions. Each region contains Groups, which are composed of various Districts. The various Districts are made up of individual stores. According to the Amended Complaint, Group 391 encompasses the States of Texas, Oklahoma, Arizona, New Mexico, Nebraska, Missouri, Louisiana, and Kansas. Amended Complaint at 4 n.1.*

alleged acts of discrimination in this case. The only timely evidence[15] presented by plaintiff concerns her termination and that of Robert Lovio, and that evidence reflects no unifying scheme. Rather, plaintiff and Lovio were employed at different stores in different states, had different supervisors, and were at different levels in the organizational hierarchy. To compound their differences, plaintiff was terminated, while Lovio claims he was constructively discharged. Moreover, unlike in *Lachney*, there is no evidence that the Group Director at the time made any ageist comments or implemented any plan to terminate persons in the protected age bracket.[16] There is, in short, nothing to connect the two instances of alleged discrimination other than the fact that both plaintiff and Lovio worked for the same company. This is insufficient to justify certification of a collective action.

Whether to certify a case as a collective action is left to the sound discretion of the trial court. That discretion, however, should not be exercised unless "[t]he facts and the circumstances of the case illustrate"[17] that a class of similarly situated individuals exists and that the judicial system would benefit by resolution of the common issues in one lawsuit. *See*

---

[15]*In her brief, plaintiff cited declarations or deposition testimony from 35 former employees, including herself. Of these employees, however, only plaintiff and Robert Lovio were terminated during the time frame at issue in this lawsuit. The vast majority of the other employees were terminated or quit before 2006. In addition, plaintiff attached 101 other exhibits to her Motion to Certify, but did not discuss or even cite these exhibits in her brief. As these exhibits were not relied upon by plaintiff, the court did not review them and orders them STRICKEN from the record. See Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1246 n.13 (10th Cir. 2003) (courts are not required to "search the record to determine whether there exists dormant evidence").*

[16]*Plaintiff testified that she could not recall any ageist language in 2009 or 2010. Exhibit 3 to Motion to Certify at 249, 312-13.*

[17]*Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 170 (1989).*

Hoffman-LaRoche Inc., 493 U.S. at 170.  The court concludes plaintiff has not met her burden of establishing a similarly situated class exists.  The court therefore **DENIES** plaintiff's motion to conditionally certify class, order defendant to produce contact information for the prospective class members, and for authorization to issue class notice [Doc. #100].  Due to plaintiff's failure to cite them, the following exhibits attached to plaintiff's motion to conditionally certify class, order defendant to produce contact information for the prospective class members, and for authorization to issue class notice are **STRICKEN** from the record: Exhibit 35.2 [Doc. #105-37]; Exhibit 35.4 [Doc. #105-39]; Exhibit 35.6 [Doc. #105-41]; Exhibits 35.8 through 35.12 [Doc. #105-43 through #105-47]; Exhibits 35.14 through 35.30 [Doc. #105-49 through #106-8]; Exhibits 35.32 through 35.41 [Doc. #106-10 through #106-19]; Exhibits 36.1 through 36.3 [Doc. #106-21 through #106-23]; Exhibits 36.6 through 36.7 [Doc. #106-26 through #106-27]; Exhibits 36.9 through 36.18 [Doc. #106-29 through #106-38]; Exhibits 36.20 through 36.21 [Doc. #106-40 through #106-41]; Exhibits 36.23 through 36.25 [Doc. #106-43 through 106-45]; Exhibit 36.27 [Doc. #106-47]; Exhibit 36.30 [Doc. #106-50]; Exhibit 36.32 [Doc. #106-52]; Exhibit 36.35 [Doc. #106-54]; Exhibits 36.37 through 36.52 [Doc. #106-56 through Doc. #106-71]; Exhibits 36.55 through 36.56 [Doc. #106-74 through 106-75]; Exhibits 36.58 through 36.60 [Doc. #106-77 through #106-79]; Exhibits 36.63 through 36.72 [Doc. #106-82 through Doc. #107-4]; and Exhibits 48.1 through 48.12 [Doc. #107-17 through #107-28].

**IT IS SO ORDERED**.

Dated this 17th day of September, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE